STATE OF CONNECTICUT *v.* MURRAY SCHWARTZ

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. CR 2-28064

Argued December 4, 1967—decided January 12, 1968

*Alan B. Fodeman,* of Bridgeport, for the appellant (defendant).

*Wilfred J. Rodie,* assistant prosecuting attorney, for the appellee (state).

DEARINGTON, J.  The defendant, after a trial to the jury, was found guilty of making indecent or harassing telephone calls in violation of § 53-174a of the General Statutes[1] and has appealed.  He has assigned error in the rejection of certain evidence.

A brief summary of the evidence may be helpful in reviewing the assignment of errors.  The jury could find that the defendant made repeated and harassing telephone calls to Pauline Bulansky and to several members of her family.  In some of his calls he used both profanity and indecent language. For some time prior to the calls, the defendant and Pauline had been extremely friendly, but at the time in question her ardor had diminished to a point of coolness.  It appears that as her enthusiasm for the defendant diminished the number of calls increased.  She was employed by her brother-in-law, Burton Duboys, as a secretary, and there was evidence that on occasion the defendant would call her office several times a day, sometimes six or seven times a day.  On some of these occasions the defendant would talk with Duboys and frequently used

---

[1] "Section 53-174a.  INDECENT OR HARASSING TELEPHONE CALLS. Any person who, by telephone under jurisdiction of the public utilities commission, addresses another in or uses indecent or obscene language, or who telephones another repeatedly for the purpose of annoying, threatening or harassing him, shall be . . . [punished]. . . . Such offense may be deemed to have been committed either at the place where the telephone call was made or at the place where it was received.  The court may order any person convicted under this section to be examined by one or more competent psychiatrists."

profanity and obscenities. An estimated 100 or more calls were received from the defendant at this office, some by Duboys and others by his employees, some calls extending to half-an-hour. Other calls were made to the home of Duboys, where the defendant talked with Duboys' wife, Beatrice, using indecent language. Such calls extended over a period of four months. A sister who lived at home with Pauline testified that the defendant called their home countless times, "two or three times a day." Eventually the family had an unlisted telephone installed. On several occasions the defendant was told by members of the Bulansky family to stop calling or a complaint would be made to the police. Finally such a complaint was made, and the defendant was arrested.

During the cross-examination of Beatrice Duboys, she was asked if she had ever witnessed an attack on the defendant by her husband. An objection to the question was sustained by the court, and the defendant took an exception. Section 226 of the Practice Book provides that when an objection to the admission of evidence is made, counsel shall state the grounds on which the evidence is claimed or the objection made. "Under this rule, when an objection is made to the admission of evidence, one of two things is called for. Either the party making the objection should accompany it with a statement of the specific ground or grounds on which the objection is based or the party offering the evidence should state the specific ground or grounds on which he claims the evidence is admissible. Of course each party may make such a statement. Whether the offering party will avail himself of the opportunity to make a statement in support of the admissibility would ordinarily depend upon whether the objecting party had stated his ground of objection with sufficient accuracy and specificity

to form a satisfactory basis, from the offering party's standpoint, for a reviewable ruling. . . . An exception, if one is taken, is to the court's ruling on the claim or claims so made and is so reviewed in this court. . . . This is true whether the ruling admits or excludes the evidence." *Casalo* v. *Claro,* 147 Conn. 625, 629. The transcript exhibit (Practice Book §§ 1006 [4], 989 [4]) fails to disclose any statement of claim by either party with respect to the admissibility or inadmissibility of the pending question. The burden is on the defendant, the appellant, to establish that there has been an erroneous ruling which was probably harmful to him. Since § 226 of the Practice Book has not been complied with by either party, we can find no error in the ruling sustaining the general objection.

Paul Rappa, a witness for the defendant, was asked on direct examination whether he had overheard a conversation between the defendant and Pauline sometime in April or May, 1966, in which Duboys was discussed. The defendant was trying to elicit from the witness certain statements claimed to have been made by Pauline relating to the conduct of Duboys. The question was objected to, apparently on the ground that it called for an answer relating to acts too remote in time and place from the offense charged, which was claimed to have been committed between December, 1966, and January, 1967. The defendant claimed the question for the purpose of impeaching the credibility of Duboys on the ground that the purported conversation would tend to show him to be a biased and prejudiced witness. Upon questioning by the court, the defendant claimed that such information was of a sequential and "building up" character—"The climax happened after seven months." Generally speaking, the bias or prejudice of a witness may be shown, either by cross-examination or by the testi-

mony of other witnesses. *Fairbanks* v. *State*, 143 Conn. 653, 657. "It is, however, the rule in many jurisdictions that if the bias or prejudice of a witness is to be shown by statements made out of court to, or in the presence of, another witness, a foundation must first be laid by asking the first witness, on cross-examination, whether or not he made such statements. . . . This rule has not been applied in this state with inflexible rigidity, as it has in many jurisdictions. From early times it has been consistently held that it rests within the judicial discretion of the trial court whether or not to admit the impeaching statements where no foundation has been laid." Ibid. No such foundation was here laid. The question, however, was objectionable, as suggested by the court, for another reason. It was not directed to any extrajudicial statement claimed to have been made by Duboys to or in the presence of this witness. The question was directed to the contents of an alleged conversation between Pauline and the defendant, overheard by the witness, in which conversation, it was claimed, certain conduct of Duboys was discussed. No claim is made that Duboys was present during the conversation. Such a conversation, even if it occurred, was hearsay coming from this witness and objectionable for the purpose for which it was offered. See Holden & Daly, Connecticut Evidence § 93a; 1 Wharton, Criminal Evidence (12th Ed.) § 249. The court did not err in ruling that the evidence was incompetent.

There is no error.

In this opinion WISE and MACDONALD, Js., concurred.